[Cite as *Cargile v. Ohio Dept. of Adm. Servs.*, 2011-Ohio-2832.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILLIAM CARGILE III, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES

    Defendant
    Case No. 2009-01140

Judge Alan C. Travis
Magistrate Holly True Shaver

MAGISTRATE DECISION

{¶ 1} Plaintiffs brought this action alleging breach of contract. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff[1] is an Ohio corporation engaged in the construction and general contracting business with its principal place of business in Cincinnati, Ohio. Plaintiff is a registered Minority Business Enterprise (MBE) within the meaning of R.C. 122.71(E)(1).

{¶ 3} In 1996, plaintiff and defendant entered into a settlement agreement in an action that plaintiff had filed in the United States District Court for the Southern District of Ohio, Eastern Division. In the federal action, plaintiff asserted that defendant had illegally expanded the eligibility criteria for MBE certification to include Asian-Indians. The settlement agreement states, in relevant part:

{¶ 4} "7. In consideration of the mutual covenants set forth herein, the parties agree as follows:

---

[1] "Plaintiff" shall refer to William Cargile Contractor II, Inc., throughout this decision.

{¶ 5} "A. DAS agrees that Plaintiffs will have full opportunity to compete for and bid upon public projects, and that all DAS contracts let by bid will be awarded to the lowest responsive and responsible bidder as required by R.C. 9.312."

{¶ 6} As a result of the settlement agreement, plaintiff dismissed its federal action.

{¶ 7} On January 7, 2009, plaintiff filed this action, asserting that defendant committed a breach of the 1996 settlement agreement.[2] Plaintiff asserts that defendant has not awarded it any public improvement contracts since the date of the settlement agreement, and that defendant's failure to do so has resulted in substantial economic loss. Defendant asserts that it has not committed a breach of the settlement agreement and, moreover, that the majority of plaintiff's claims are barred by the applicable statute of limitations.

{¶ 8} R.C. 2743.16(A) provides in relevant part:

{¶ 9} "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."

{¶ 10} Inasmuch as plaintiff filed its original complaint on February 21, 2007, the court must limit its analysis to any claims that arose on or after February 21, 2005.

{¶ 11} To enforce a settlement agreement, "[r]elief may be sought through the filing of an independent action sounding in breach of contract * * *." *Bolen v. Young* (1982), 8 Ohio App.3d 36, 38. "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a

result of the breach." *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108.

**{¶ 12}** Patricia Cunningham testified that she has been employed as plaintiff's office manager since 2004. Cunningham testified that Plaintiffs' Exhibits M1-3 are comprised of three bids that plaintiff submitted for state projects.[3] The bids at issue were for construction management services contracts dated August 4, August 14, and November 17, 2008, respectively. The bids for the two projects in August were submitted to the owner, Ohio State University (OSU). The bid for the project in November was submitted to the owner, Ohio School Facilities Commission/Forest Hills Schools (OSFC). Cunningham testified that plaintiff did not make the "short list" for any of these projects. Cunningham testified that plaintiff had submitted bids for other state projects, including projects with Miami University and the University of Cincinnati, but that she did not have copies of those bid documents.

**{¶ 13}** William Cargile, III, testified that he had started his own business in 1956, and that his company began to bid on state projects in the 1970s. Cargile testified that in July 2008, he had a meeting with Lee Fisher, then Lieutenant Governor, wherein he expressed his dissatisfaction with his treatment by the state since the 1996 settlement agreement. According to Cargile, he discussed with Fisher two projects for construction management services where plaintiff had been placed on the "short list" but ultimately was not selected. Cargile could not specify which projects he discussed with Fisher. Cargile also stated that he had a meeting with Sandra Drabik, Director of defendant, in 2008 regarding his complaints about not being selected for any state project.

---

[2]The parties do not dispute that plaintiff originally filed Case No. 2007-02173 on February 21, 2007, which was voluntarily dismissed on August 11, 2008, and that this action was timely filed within one year of the dismissal pursuant to R.C. 2305.19(A).
[3]Plaintiff attempted to show that it submitted a bid for a project on June 1, 2001, to the Ohio School Facilities Commission/Cincinnati Public Schools, however that exhibit (Plaintiffs' Exhibit M-4) was not admitted inasmuch as any claim regarding that project arose prior to February 21, 2005.

{¶ 14} In addition, Cargile testified that at some point after the 1996 settlement agreement, he collaborated with both Heery and Turner Construction Companies on different occasions to submit bids for public projects but that, even in combination with those companies, plaintiff did not make the short list. In addition, Cargile also stated that Messer Company informed him at some point after 1996 that it would no longer enter into contracts with plaintiff because of the federal lawsuit that plaintiff had filed.

{¶ 15} Cargile explained that from 2005 to the present, plaintiff had submitted bids for state projects. However, Cargile was uncertain whether plaintiff had submitted any bids directly to defendant during that time. With regard to the bids represented in Plaintiffs' Exhibits M1-3, Cargile testified that his company sent those bids directly to either OSU or OSFC. Cargile admitted that he did not have any documentation to show that his company sent any bids directly to defendant from 2005 forward. Cargile also admitted that he did not know which companies were awarded the contracts for any of the projects referenced in Plaintiffs' Exhibits M1-3.

{¶ 16} Lane Beougher testified that he works in the state architect's office in defendant's general services division. Beougher explained that his office prepares the bids for construction contracts for state agencies. Beougher stated that both OSU and OSFC administer their own projects; that defendant has not administered projects for OSU since 1999; and that defendant has never administered any project for OSFC.

{¶ 17} Kathleen Stewart testified that she is employed as a construction project coordinator for defendant through the state architect's office. Stewart testified that her office processes contractor's and architect's documents for bid openings, and that records are kept of all the unsuccessful bidders on state projects. Stewart testified that after searching through hundreds of unsuccessful bidder documents, she found no bids submitted to defendant from plaintiff from 2001 through 2009.

{¶ 18} Upon review of the evidence, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant committed a breach of the

1996 settlement agreement. Although plaintiff provided evidence that it submitted bids for projects managed by OSU and OSFC, plaintiff brought forth no evidence that it submitted any bids to defendant or that defendant rejected any of plaintiff's bids from February 21, 2005, to the date of trial. Moreover, plaintiff presented no evidence to support a claim that it was prevented from bidding on any of the projects shown in Plaintiffs' Exhibits M1-3, or that any of those projects were not awarded to the lowest responsive and responsible bidder. In short, plaintiff has failed to prove a prima facie case of breach of contract. For the foregoing reasons, the court finds that plaintiff has failed to prove any of its claims by a preponderance of the evidence and, accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

Christopher P. Conomy
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Percy Squire
514 South High Street
Columbus, Ohio 43215

HTS/cmd
Filed May 27, 2011
To S.C. reporter June 7, 2011